*In re* MARRIAGE OF BONNIE M. HIMMEL, Petitioner-Appellee, and PAUL R. HIMMEL, Respondent-Appellant.

Second District No. 2—95—1519

Opinion filed December 3, 1996.

Juul H. Thompson, of Batavia, for appellant.

Bruce R. Kelsey, of Law Offices of Bruce R. Kelsey, of West Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Respondent, Paul R. Himmel (Paul), appeals from the circuit court's order of October 31, 1995, granting the petition of petitioner, Bonnie M. Himmel (Bonnie), to vacate a judgment of dissolution of marriage incorporating the terms of a marital settlement agreement that the court entered on June 1, 1981, in case No. 80—D—2269. See 735 ILCS 5/2—1401 (West 1994). We vacate the circuit court's order and remand.

In support of her amended petition to vacate, Bonnie alleged that respondent had fraudulently concealed his pension benefit; alternatively, petitioner alleged that the settlement was unconscionable. The court found that there was no fraudulent concealment by Paul and that the provisions for relief from final judgments found in section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 1994)) did not apply. Citing section 502 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/502 (West 1994)), the court nevertheless vacated the June 1981 judgment, finding the settlement agreement unconscionable. The court also found there was no just reason to delay enforcement or appeal of its order. See 155 Ill. 2d R. 304(a). A timely appeal ensued. This court has appellate jurisdiction. See *In re Marriage of Tzoumas*, 187 Ill. App. 3d 723, 728 (1989); *In re Marriage of Carlson*, 101 Ill. App. 3d 924 (1981); 155 Ill. 2d R. 304(b)(3).

The parties were married to each other twice. The first marriage, which occurred in 1957, was terminated by a judgment of dissolution on June 1, 1981. The marital settlement agreement that was incorporated into that judgment divided the parties' marital and nonmarital assets but did not list Paul's pension. The transcript of that proceeding shows that Bonnie voluntarily chose not to be represented by counsel at the hearing. She stated that she reviewed the agreement, that she employed counsel to review it, that she understood all the terms of the agreement, that it was fair and equitable, that she was not coerced to sign the agreement, and that she intended to be bound by it. Evidence concerning the parties' assets was presented, but the pension was not mentioned. The court found that the agreement was entered into voluntarily by the parties and that it was not unconscionable, and it entered the final judgment of dissolution.

The parties were remarried to each other on December 10, 1982. On September 20, 1994, Bonnie filed a petition for dissolution of the second marriage in case No. 94—D—2447. Paul, who was now retired, had been continually employed by People's Gas from 1959 to October 1993. The record indicates that he received a lump sum retirement benefit, the estimated value of which in December 1993 was $352,000. The sum was transferred into an investment fund.

On March 21, 1995, Bonnie filed a petition to vacate (petition) the 1981 judgment, alleging that this pension had been fraudulently concealed from her and this fraud tolled the two-year limitations period for vacatur of the judgment. See 735 ILCS 5/2—1401(c) (West 1994). She also requested that the two cases be consolidated. Paul moved to dismiss the petition, arguing there was no showing of misrepresentation or that the asset was intentionally concealed; that the petition failed to comply with section 2—1401; and that Bonnie failed to challenge or attempt to modify the agreement in a timely manner and was now estopped from raising the claim. Bonnie filed an amended petition to vacate, arguing that, under section 502 of the Marriage Act, the court could find the settlement agreement unconscionable, vacate the judgment, and distribute the assets equitably. Paul argued that section 2—1401 of the Code was controlling, not section 502 of the Marriage Act, which permits a court to reject as unconscionable a property settlement agreement made in connection with the dissolution of a marriage; if not found unconscionable, such an agreement would be binding upon the court. 750 ILCS 5/502(b), (c) (West 1994).

At the evidentiary hearing on August 29, 1995, the court consolidated the cases for the purpose of hearing the petition and respondent's motion to strike and dismiss. Bonnie testified she was not represented by counsel at the 1981 dissolution proceeding. She spoke to Paul's attorney, Bruce David, prior to the entry of the judgment. He informed her that he could not represent her. Prior to the hearing in that case, Paul had mentioned that he would eventually be entitled to retirement benefits from People's Gas. Paul had previously told her that, when he retired, if she were married to him, they would receive the retirement benefits. David did not mention that she would receive retirement benefits as a result of the settlement agreement. She did not recall that Paul ever mentioned the monetary value of his pension. She did not know at the time of the settlement whether she was entitled to any funds from his pension and did not question that it was not listed in the settlement agreement. She conceded that she knew of the pension from her conversations with Paul over the years. She remarried Paul in December 1982.

Paul testified that he retired in October 1993 after a heart operation, having worked for People's Gas continuously for 34 years. The lump sum pension distribution took place in December 1993 and was deposited into an investment account the value of which fluctuated with the market. In 1981, he did not believe the pension had a value because it was a "free" pension. He made no contributions to it. In order to collect the pension, he had to qualify by having accumulated 85 points. The points included the age of retirement (age 55) added to the years of service (30 years). He believed he was vested after 10 years, but he would have received nothing in 1982 if he had left the company. He could only receive the pension after reaching age 55 and thought it had no value at the time of the dissolution. He discussed the pension with his attorney and Bonnie at the time of the first dissolution proceeding. He believed the property distribution had been equally divided.

■ Paul contends that a section 2—1401 petition is the proper vehicle by which to vacate a judgment after 30 days have elapsed from its entry. Subsection 2—1401(c) of the Code states:

"[T]he petition must be filed not later than 2 years after the entry of the order or judgment. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2—1401(c) (West 1994).

■ ■ A section 2—1401 petition serves to bring to the court that rendered judgment facts not appearing of record which, if known, would have prevented its rendition. *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705 (1993). However, the proceeding is not intended to give the litigant a new opportunity to do that which should have been done in an earlier proceeding or to relieve the litigant of the consequences of her mistake or negligence. *Broday*, 256 Ill. App. 3d at 705. To prove fraudulent concealment, the petitioner must show by clear and convincing evidence that the respondent intentionally misstated or concealed a material fact that he had a duty to disclose and that she detrimentally relied upon his statement or conduct; for the concealment to be actionable, it must be such that the silent party intended to deceive the other. *Broday*, 256 Ill. App. 3d at 703. Furthermore, a settlement agreement will be set aside only if the misrepresentation of the assets could not reasonably have been discovered at the time of, or prior to, the entry of the judgment, and a litigant will not be relieved of the consequences of her lack of diligence in failing to discover such information relevant to the dissolution proceeding. 256 Ill. App. 3d at 703.

■ Here, Bonnie clearly knew of the pension, but took no timely

affirmative action to discover its value or to assert her claim to it. There is no evidence that Paul intentionally misrepresented or concealed this asset. We agree with the trial's conclusion that there was no fraudulent concealment that would toll the two-year limitations period prescribed by section 2—1401.

We next consider whether the court could otherwise properly vacate a 14-year-old judgment under the circumstances presented. The court appears to have relied on section 502 of the Marriage Act pertaining to the presentation of property settlements to the court in connection with the entry of a judgment of dissolution. The court is bound by the agreement in rendering its judgment of dissolution unless it finds that the agreement is unconscionable. However, we are unaware of any authority of a trial court to vacate a final judgment of this vintage based on that provision. The cases cited by the court in its order include *In re Marriage of Reines*, 184 Ill. App. 3d 392 (1989), and *In re Marriage of Carlson*, 101 Ill. App. 3d 924 (1981). We do not find those cases dispositive.

In *Reines*, the reviewing court concluded that the petitioner was entitled to a hearing on her section 2—1401 petition when she alleged (presumably fraudulent) concealment of assets and contended on appeal that the settlement agreement was unconscionable. The relief was requested pursuant to section 2—1401 of the Code, and no question regarding the limitations period was raised. Thus, the question was not presented whether the court could vacate the judgment beyond the two-year limitations period pursuant to section 502 of the Marriage Act.

Similarly, in the *Carlson* case, the reviewing court concluded that the trial court's partial vacatur of a judgment incorporating a settlement agreement for unconscionability was proper where the petitioner brought the petition pursuant to section 2—1401 of the Code. It appears from the limited recitation of the facts in that case that the petition was timely and no limitations problem was considered. In both cases, the decisions rested on the court's authority to grant or deny a section 2—1401 petition rather than on any authority purportedly conferred by section 502 of the Marriage Act, which permits a court to reject the parties' settlement agreement for unconscionability when it enters a judgment of dissolution. A court's authority to vacate a judgment that has become final is narrowly circumscribed by the limited methods available under Illinois law to vacate or set aside final judgments.

The case of *King v. King*, 130 Ill. App. 3d 642 (1985), is highly instructive. In that case, the reviewing court found that the trial court had no jurisdiction to consider a post-judgment "motion"

brought more than two years after the entry of a final judgment of dissolution where the respondent wife alleged that a significant marital asset was not included in the marital settlement agreement (a large personal injury settlement received by the husband after the judgment was entered). The trial court rejected section 2—1401 as the basis for modifying the judgment as there was no evidence of fraudulent concealment. However, relying on section 503 of the Marriage Act, which confers a court's authority to divide marital assets (750 ILCS 5/503 (West 1994)), the trial court determined that the original judgment was not final as it failed to include the asset; the court then awarded respondent a share of the funds. On appeal, respondent again maintained that since the trial court had not disposed of all the marital property in its original order, the disposition was not final and the court retained jurisdiction to modify the judgment despite a lapse of more than two years. The reviewing court disagreed.

The reviewing court in *King* found that the original judgment was final. The court noted that the existing section 510(a) of the Marriage Act provided that " '[t]he provisions as to property disposition may not be revoked or modified, *unless the court finds the existence of conditions that justify the re-opening of a judgment under the laws of this State.*' " (Emphasis in original.) *King*, 130 Ill. App. 3d at 654, quoting Ill. Rev. Stat. 1983, ch. 40, par. 510(a) (now 750 ILCS 5/510(b) (West 1994)). The court explained that a judgment of dissolution must be accorded the same degree of finality as judgments in other proceedings. Since there was no basis to toll the two-year limitations period under section 2—1401 of the Code, the reviewing court concluded that the trial court did not have jurisdiction to consider the respondent's belated "motion" for post-judgment relief and vacated the trial court's order for lack of jurisdiction.

The court observed that, though not invoked by the respondent in the case before it, there were other methods under the laws of Illinois to seek relief from a final judgment after 30 days from its entry other than by means of a section 2—1401 petition (including legal disability, duress, and fraudulent concealment). In appropriate circumstances, relief from a final judgment sought more than 30 days after its rendition may be granted by application of the revestment doctrine; by a finding that the judgment is void; by agreement of the parties; and by entering an order *nunc pro tunc. King*, 130 Ill. App. 3d at 655. None of these additional methods is applicable here. The court in the original proceeding had jurisdiction to enter its order; the order was final and was not subject to vacatur or modification.

We agree with the rationale of *King*. The policy respecting the

finality of judgments must be followed here. We have been provided no authority that would persuade us to engraft unconscionability onto section 2—1401 as an additional basis on which to toll the two-year limitations period and thus permit the court to vacate the judgment. We fail to see how section 502 of the Marriage Act supersedes the usual two-year limitations period of section 2—1401. This limitation has been strictly construed by the courts, and, even if the circumstances were believed to warrant it, we cannot extend the limitation by judicial fiat. *Sidwell v. Sidwell*, 127 Ill. App. 3d 169, 173 (1984). The limitations period "mandated by this section must be adhered to in the absence of a clear showing that the person seeking relief is under legal disability or duress or the grounds for relief are fraudulently concealed." *Sidwell*, 127 Ill. App. 3d at 174.

Because the parties remarried after the entry of the 1981 judgment, Bonnie also urges this court to affirm the trial court's decision on any basis supported by the record. Citing *Ringstrom v. Ringstrom*, 101 Ill. App. 3d 677, 680-81 (1981), Bonnie asserts that, once the parties remarried each other, they were restored to their respective rights as husband and wife as if they had never been divorced. She maintains, apparently for the first time on appeal, that the original settlement agreement is unenforceable. Since this issue appears to have been raised here for the first time in a rather cursory manner and was not presented to the trial court for consideration, we decline to consider it on the state of this record.

Paul appears to state the more current view of the rule that the remarriage of the parties to each other does not render the original dissolution judgment or the proceedings void, but the remarriage merely renders the prior judgment unenforceable at least to the extent that it is unexecuted or incomplete. *In re Marriage of Parks*, 258 Ill. App. 3d 479, 484-85 (1994). We make no ruling on the merits of the parties' respective positions. We believe that any new theory regarding whether Paul's retirement benefits are reachable, other than by vacatur of the 1981 judgment, should be fully articulated and presented to the trial court in the first instance. The issue presented to this court for review is whether the trial court erred in vacating the judgment of dissolution. Whether a prior judgment may be vacated is a different question than whether and to what extent that judgment may be unenforceable by reason of subsequent events.

Because the cause is being remanded, we leave it to the trial court to consider any additional legal theories raised by the parties in fashioning an equitable distribution of their assets. The trial court begins with a clean slate except that any relief granted must be consistent with the views expressed herein.

Since the circuit court had no authority to vacate the 1981 judgment, we vacate its order of vacatur and remand the cause for further proceedings.

Vacated and remanded.

BOWMAN and RATHJE, JJ., concur.